IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| COURTNEY L. LAUGHERY,<br><br>Plaintiff,<br><br>vs.<br><br>FRANK J. BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendant. | CV 25-111-BLG-TJC<br><br>**ORDER** |

Plaintiff Courtney L. Laughery ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") regarding the denial of her claim for disability insurance benefits and supplemental security income benefits. (Doc. 2.) The Commissioner subsequently filed the Administrative Record ("A.R."). (Doc. 7.)

Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of the Commissioner's denial of disability benefits and remand for an award of disability benefits, or alternatively for further administrative proceedings. (Doc. 12.) The motion is fully briefed and ripe for the Court's review. (Docs. 14, 15.)

/ / /

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court finds the ALJ's decision should be **REVERSED** and **REMANDED** for further administrative proceedings.

## I. PROCEDURAL BACKGROUND

Plaintiff filed an application for disability insurance benefits and supplemental security income on November 1, 2021. (A.R. 17.) A hearing was held before Administrative Law Judge Charles Woode ("the ALJ") on June 12, 2024. (A.R. 34–69.) On August 2, 2024, the ALJ issued a written decision finding Plaintiff not disabled. (A.R. 17–28.) Plaintiff requested review of the decision, and the Appeals Council denied Plaintiff's request. (A.R. 1–3.) Thereafter, Plaintiff filed the instant action. (Doc. 2.)

## II. LEGAL STANDARDS

### A. Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision. 42 U.S.C. §§ 405(g), 1383(c)(3). The scope of judicial review is limited. The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir.

1997)). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten v. Sec'y of Health & Hum. Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). But even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

**B. Determination of Disability**

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) the claimant suffers from a medically determinable

physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work she previously performed, or any other substantial gainful employment which exists in the national economy. 42 U.S.C. § 423(d)(1)(A), (d)(2)(A). A claimant must meet both requirements to be classified as disabled. *Id*.

The Commissioner makes the assessment of disability through a five-step sequential evaluation process. If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin*., 223 F.3d 968, 974 (9th Cir. 2000)). The five steps are:

1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

Although the ALJ must assist the claimant in developing a record, the claimant bears the burden of proof during the first four steps, while the Commissioner bears the burden of proof at the fifth step. *Tackett v. Apfel*, 180 F.3d 1094, 1098, n.3 (9th Cir. 1999) (citing 20 C.F.R. § 404.1512(d)). At step five, the Commissioner must "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100 (citing 20 C.F.R. § 404.1560(b)(3)).

## III. THE ALJ'S FINDINGS

The ALJ followed the five-step sequential evaluation process in considering Plaintiff's claim. First, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date of August 8, 2017. (A.R. 19.)

Second, the ALJ found that Plaintiff had the following medically determinable severe impairments: cervical and lumbar spondylosis, lupus, migraines, and headaches. (A.R. 20.) The ALJ also found that Plaintiff had other impairments that did not rise to the level of a severe impairment, including major depressive disorder, generalized anxiety disorder, attention-deficit hyperactivity

disorder, post-traumatic stress disorder, and post-concussion syndrome. (A.R. 20.)

Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (A.R. 22–23.)

Fourth, the ALJ concluded Plaintiff has the RFC to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: the claimant can frequently stoop, kneel, crouch, crawl, climb ramps, stairs, handle, finger, and push or pull controls with her bilateral upper extremities. She cannot climb ladders, ropes, or scaffolds. She should avoid concentrated exposure to atmospheric conditions as defined in the Selected Characteristics of Occupations of the DOT and hazards such as unprotected heights.

(A.R. 23.)

The ALJ next found that Plaintiff did not have any past relevant work, but there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (A.R. 26–27.) Thus, the ALJ found that Plaintiff was not disabled. (A.R. 28.)

## IV. DISCUSSION

Plaintiff identified the following issues for review in her opening brief:

> "1. Whether the ALJ failed to describe with specificity how [Plaintiff's] testimony of limitations was not consistent with the evidence of record and lacked substantial evidence in the record in view of SSR 96-8p and the specificity requirements of *Brown-Hunter v. Colvin*. Is a 50% reduction in migraines down to 10 or 15 a sufficient basis to find the condition is adequately controlled with medication?

/ / /

> 2. Whether the Commissioner erred in failing to incorporate all [Plaintiff's] impairments, including major depression, PTSD, ADHD, and post-concussion syndrome, failing to incorporate any mental limitations into the vocational consultant's hypothetical question.
>
> 3. Whether the ALJ failed to comply with 20 C.F.R. §416.920c and improperly relied upon the State Agency medical opinions rendered without consideration of significant mental health evidence submitted after their opinions and (CAR-2201–2434, 2484–2512), therefore, without supportability and consistency."

(Doc. 12 at 5.)

### A. Reliance on State Agency Medical Opinions

Plaintiff contends that the ALJ failed to comply with 20 C.F.R § 416.920c and improperly relied on medical opinions rendered by state agencies. As presented in her stated issues for review, Plaintiff argues that relevant mental health evidence was submitted in the record after the state agency consultants' opinions were rendered, making them insupportable and inconsistent.

At Step Two, the ALJ discussed two mental health assessments rendered by state agency consultants and explained that he found Dr. De Paz-Ortiz's assessment unpersuasive and Dr. Berkowitz's assessment generally persuasive. (A.R. 21–22.) The ALJ also discussed three physical assessments conducted by three other physicians acting as state agency consultants. (A.R. 25–26.)

Other than the statement of issues presented for review, however, Plaintiff does not elaborate on her argument that the ALJ improperly relied on state agency medical opinions or explain how the ALJ failed to comply with § 416.920c, a

regulation that contains numerous sections and subsections. Nor does Plaintiff specify which medical opinion the ALJ relied upon in error.

Because Plaintiff makes only a cursory reference to this issue in her brief with no accompanying argument, the Court finds she has not sufficiently placed the ALJ's consideration of the state agency medical opinions in issue. *See Poynter v. Saul*, 2020 WL 1304489, at *15 (D. Nev. Mar. 19, 2020) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones.").

**B. Evaluation of Subjective Symptom Testimony**

Plaintiff argues that the ALJ improperly discounted her subjective symptom testimony. The Commissioner counters that the ALJ's findings were supported by substantial evidence.

A claimant's testimony is analyzed in two steps. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* Second, if there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ provides "specific, clear and convincing

reasons" for doing so. *Id.* "In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). As noted by the Ninth Circuit, "[t]his is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 925 (9th Cir. 2002)).

To assess a claimant's subjective symptom testimony, the ALJ may consider (1) ordinary credibility techniques, (2) unexplained or inadequately explained failure to seek or follow treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Fair v. Bowen*, 885 F.2d 597, 603–04 (9th Cir. 1989).

In order for the ALJ to use a claimant's daily activities to make an adverse credibility determination, these activities must either meet the threshold for

transferable work skills or contradict the claimant's testimony about their limitations. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. *See also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from [her] credibility as to [her] overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.") (quoting *Fair*, 885 F.2d at 603). Thus, an ALJ cannot use "a few random daily activities" to discredit a claimant's testimony absent "findings as to the pervasiveness of these activities, what they entailed, or how the physical functions displayed during the activities are transferable to a work setting." *Smith v. Berryhill*, 704 F. App'x 652, 653 (9th Cir. 2017).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that Plaintiff's statements about the debilitating effects of her symptoms were not entirely consistent with the medical evidence in the record. (A.R. 24–25.) Therefore, the ALJ was required to cite specific, clear, and convincing reasons for

rejecting Plaintiff's subjective testimony about the severity of her symptoms. The Court finds the ALJ did so.

**1. Physical Limitations**

As for Plaintiff's physical limitations and experiences of pain and numbness, the ALJ stated that the alleged severity of Plaintiff's symptoms was "inconsistent with her courses of treatment, limited positive examination findings, and reported functioning[,]" (A.R. 24) and that "the evidence only partially supports the alleged loss of functioning." (A.R. 25.)

The ALJ contrasted Plaintiff's testimony with medical imaging, testing, and reports which indicated only mild limitations and/or normal results. (A.R. 24.) The ALJ also highlighted medical procedures that resulted in significant reductions of pain, as well as medical records indicating that Plaintiff's pain is well-controlled through medications, muscle relaxers, and anti-inflammatories. (A.R. 24–25.) As for the severity of Plaintiff's chronic migraines, headaches, and neck pain, the ALJ contrasted Plaintiff's testimony with evidence in the medical record indicating that the frequency and severity of these symptoms had been dramatically reduced through Botox procedures and medication. (A.R. 25.)

The ALJ also discussed reports from state agency consultants who had previously determined that Plaintiff was not disabled. (A.R. 25–26.) The ALJ found most of these assessments unpersuasive, stating that the findings were

inconsistent with the overall record evidence, although one assessment was considered partially persuasive to the degree its findings were consistent with other evidence in the medical record. (A.R. 25–26.) In that assessment, the state agency consultant found that Plaintiff could perform light work. (A.R. 26.)

In sum, the ALJ pointed to specific evidence from Plaintiff's medical records that undermines some of her subjective reports about her impairments. There is adequate support for the ALJ's conclusions in the record. (*See* A.R. 358, 406, 408, 463 (medical imaging results showing limited impairments); A.R. 742 (negative Tinel's and Phalen's tests); A.R. 742–45, 901–02, 2221–22 (findings of normal range of motion and strength); A.R. 431, 437, 447, 792, 858, 928, 2207, 2521–22, 2528 (reports that procedures and medications have afforded Plaintiff pain relief); A.R. 431, 437, 447, 604, 728, 745, 782, 825, 852, 878, 881, 899, 924, 928, 965, 2207, 2225 (reports stating Plaintiff experienced a decrease in migraine frequency and/or severity due to medication and/or Botox injections).)

Finally, Plaintiff argues that the ALJ erred by failing to consider Plaintiff's limitations on a chronological basis. (Doc. 12 at 28.) Plaintiff contends that the "ALJ made no chronological review to determine if the symptoms waxed and waned with time." (*Id.* at 30–31.) The basis for this contention is unclear, however, as the ALJ found that Plaintiff's migraines and other pain symptoms decreased over time as a result of treatment. (A.R. 25.)

### 2. Mental Limitations

Plaintiff argues that the ALJ erred in finding her impairments of major depressive disorder, post-traumatic stress disorder, attention-deficit hyperactivity disorder, and post-concussion syndrome to be non-severe at Step Two. The Commissioner counters that substantial evidence supports the ALJ's findings of only mild limitations from these conditions. (Doc. 14 at 6.)

At Step Two, the ALJ evaluated Plaintiff's limitations in the four broad areas of mental functioning set out at 20 CFR, Part 404, Subpart P, Appendix 1: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (A.R. 20–21.) In each area, the ALJ considered Plaintiff's testimony about her limitations and compared her subjective self-assessment with her activities of daily living and/or notations in her medical record.

The ALJ contrasted Plaintiff's testimony that she struggles to understand and process information with the fact that she "is able to manage her own finances, shop on her phone by using apps, and also maintain multiple medications with reminders," as well as evidence in the record that shows "intact short and long-term memory, concentration, insight, and judgment." (A.R. 20.) The ALJ compared Plaintiff's testimony about difficulty interacting with others with medical examinations where Plaintiff was noted to be cooperative, pleasant,

friendly, and communicative. (A.R. 20–21.) The ALJ contrasted Plaintiff's testimony about difficulty concentrating with psychiatric treatment records, noting Plaintiff has generally logical thinking and appropriate thought content. (A.R. 21.) Finally, the ALJ contrasted Plaintiff's testimony about difficulty adapting and managing herself with her aforementioned ability to manage her own finances, shop on her phone, and maintain medications with reminders, as well as medical records indicating Plaintiff was well-groomed and had good hygiene and an appropriate appearance at her medical appointments. (A.R. 21.)

In sum, the ALJ pointed to specific evidence that undermines some of Plaintiff's subjective reports about her mental impairments. There is adequate support for the ALJ's conclusions in the record. (*See* A.R. 281 (Plaintiff's statements that she manages her own finances, shops on her phone, and takes her medications with reminders); A.R. 380, 398, 459, 741, 790, 802, 805, 813, 816, 832, 834, 836, 1978–79, 2012, 2492, 2501, 2509 (findings of intact short and long-term memory, concentration, insight, and/or judgment); A.R. 433, 440, 446, 452, 731, 784, 790, 855, 901, 927, 1978, 2012, 2209, 2221, 2228, 2484, 2488, 2492, 2509 (notations that Plaintiff was cooperative, pleasant, friendly, and/or communicative); A.R. 596, 599, 606, 609, 614, 620, 624, 629, 632, 635, 642, 646, 907, 935, 1978, 2012, 2509 (noting linear thought process, logical thinking, and/or appropriate thought content); A.R. 433, 440, 447, 452, 459, 731, 784, 790, 813,

816, 855, 877, 901, 927, 1978, 2012, 2209, 2221, 2228, 2501 (noting Plaintiff was well-groomed, had good hygiene, and/or appropriate appearance).)

The Court may not have evaluated the evidence in the same manner, but "[i]t is not the court's role to 'second-guess' an ALJ's reasonable interpretation of a claimant's testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022). The Court finds the ALJ properly supported his reasons for discounting Plaintiff's testimony regarding the extent of her mental limitations. Plaintiff essentially argues a different interpretation should be drawn from the medical records and her testimony. But the Court may not substitute its judgment for that of the ALJ. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Rather, the Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

The Court, therefore, finds that the ALJ's evaluation of Plaintiff's testimony is properly supported by specific, clear, and convincing reasons.

### C. Determination of RFC

Plaintiff argues that the ALJ's determination of the RFC does not account for the full range of her physical and mental limitations.

The RFC is a measure of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1); *see also* SSR 96-8p, 1996 WL 374184, at

*2. Social Security Ruling 96-8p requires the ALJ to assess a claimant's RFC based on "*all* of the relevant evidence in the case record." SSR 96-8p, 1996 WL 374184, at *5 (emphasis in original). The ALJ is not permitted to "cherry pick" from the record to determine the RFC. *See Hoffschneider v. Kijakazi*, 2022 WL 3229989, at *1 (9th Cir. Aug. 10, 2022) (quoting *Garrison*, 759 F.3d at 1017 n.23). Instead, in assessing the RFC, the ALJ must consider the "limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5. When a claimant's impairments are supported by substantial evidence in the record, the ALJ must either consider them in the RFC or cite reasons for excluding them. *See Robbins*, 466 F.3d at 886.

As noted above, the ALJ determined that Plaintiff's mental impairments were not severe, and found her limitations in the four broad areas of mental functioning to be mild. Nevertheless, any limitation posed by her mental impairments must still be considered in determining the RFC. "An ALJ must consider the impact of all impairments on a claimant's RFC, whether they were deemed severe or not severe at step two. . . . [I]mpairments and any limitations they may cause do not drop out of the analysis simply because the impairment was deemed nonsevere at step two." *Diane v. Kijakazi*, 2023 WL 7301969, at *2 (C.D. Cal. Nov. 6, 2023) (internal citations omitted). "[W]hile the ALJ [is] free to reject [a claimant's] testimony as not credible, there [is] no reason for the ALJ to

disregard his own finding that [a claimant's] nonsevere [impairments] caused some 'mild' limitations in the areas of concentration, persistence, or pace." *Hutton v. Astrue*, 491 F. App'x 850, 850–51 (9th Cir. 2012). Accordingly, many decisions in the Ninth Circuit have found reversible error where the ALJ failed to consider mild mental impairments in determining the RFC. *Patricia C. v. Saul*, 2020 WL 4596757, at *13 (S.D. Cal. Aug. 11, 2020) (collecting cases).

Here, the ALJ found at Step Two that Plaintiff has nonsevere medically determinable mental impairments, and that Plaintiff has mild limitations in the four broad areas of mental functioning. (A.R. 20–22.) The ALJ also acknowledged at Step Two that the "mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." (A.R. 22.) Yet the ALJ failed to consider Plaintiff's mental functioning in any greater detail at Steps Four and Five. Instead, the ALJ only discussed the extent of Plaintiff's physical limitations. (*See* A.R. 23–26.) Under these circumstances, it is not clear "whether the ALJ considered his step two finding of a mild limitation in [each of the four areas of mental functioning] and had a good reason for concluding that it did not affect Plaintiff's RFC, or whether he forgot about [those] mild limitation[s] all together [sic]." *Diane*, 2023 WL 7301969, at *2.

Therefore, the ALJ erred by failing to account for Plaintiff's mental impairments in his determination of the RFC. *See id.* at *5 ("[H]aving found the

existence of an impairment that mildly limits a claimant in some way, the ALJ does have to show his work as to why that limitation has no bearing on the RFC. Because there is no indication that the ALJ did so here, the ALJ erred.”).

The Court also cannot find that the error was harmless. In presenting hypothetical questions to the vocational expert (“VE”), the ALJ did include some mental limitations relative to understanding, remembering, or applying information, and interacting with others. (A.R. 56–57.) But the ALJ did not include limitations regarding concentration, persisting, and maintaining pace, or adapting or managing oneself. At least with respect to concentration, persisting, and maintaining pace, this omission is significant.

The VE was asked by Plaintiff’s attorney whether the need for “ongoing prompting, reminders and really redirection to stay on their tasks and to complete tasks” would preclude gainful employment. (A.R. 62.) The VE testified that this additional limitation would preclude employment in the positions the VE had identified as suitable for Plaintiff. (A.R. 62.)

At Step Two the ALJ determined that Plaintiff has mild limitations in her ability to concentrate, persist, and maintain pace. (A.R. 20–21.) These limitations are consistent with the additional limitations posed by Plaintiff’s attorney, which the VE testified would, in combination with other physical and mental limitations, be work-preclusive. Thus, the Court cannot say that the ALJ’s error in failing to

include Plaintiff's mental limitations in the RFC and in hypotheticals posed to the VE was harmless. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) ("An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'") (quoting *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)).

### E. Remand or Reversal

"[T]he decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court." *Reddick*, 157 F.3d at 728. If the ALJ's decision "is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

Here, the Court finds that remand is appropriate as it may be possible to remedy defects in the ALJ's decision.

## V. CONCLUSION

Based on the foregoing, **IT IS ORDERED** that the Commissioner's decision is **REVERSED** and this matter be **REMANDED** pursuant to sentence

four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 29th day of September, 2026.

TIMOTHY J. CAVAN
United States Magistrate Judge